IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DARIUS RONDELL CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-074 |
| | ) | |
| MARTIN O'MALLEY, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be **DENIED**, (doc. no. 17), the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.   BACKGROUND

Plaintiff protectively applied for SSI in October 2018,[1] and he alleged a disability onset date of June 1, 2015.  Tr. ("R."), pp. 17, 252.  However, he later amended his alleged onset date,

---

[1] The Court notes inconsistency within the record concerning whether Plaintiff filed his application on October 1, 2018, or October 29, 2018.  See, e.g., R. pp. 17, 252, 270, 394.  However, the relevant period of disability consideration for an SSI application is the month of the application through the date of the

through counsel and in writing, to his protective filing date of October 1, 2018.  R. 17, 394.
Plaintiff was forty-three years old on October 1, 2018, and was forty-eight years old at the time
the Administrative Law Judge ("ALJ") issued the decision currently under consideration.  R. 26-
27, 252.  Plaintiff's alleged disabilities are schizoaffective disorder bipolar type, personality
disorder, congestive heart failure, cardiomyopathy, tardive dyskinesia, high blood pressure, and
strokes.  R. 19-20, 274.  Plaintiff reported completing school through the ninth grade, R. 275, and
prior to his alleged disability date, accrued a history of past work that included self-employment
as a landscape laborer and warehouse and manufacturing work, R. 26, 275, 298-300.

The Social Security Administration denied Plaintiff's application initially and on
reconsideration.  R. 62-90.  Plaintiff requested a hearing before an ALJ, R. 115-16, and ALJ Ann
Paschall held a hearing on February 13, 2023, R. 34.  Represented by counsel, Plaintiff appeared
and testified, as did vocational expert ("VE") Monique James.  R. 34-60.  On April 10, 2023, the
ALJ issued a decision finding Plaintiff not disabled.  R. 17-27.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1.  The claimant has not engaged in substantial gainful activity since October 1,
    2018, the application date.  (20 C.F.R. § 416.971 *et seq*.).

2.  The claimant has the following severe impairments:  schizoaffective disorder
    bipolar type, personality disorder, congestive heart failure, and cardiomyopathy
    (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments in 20
    CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and
    416.926).

4.  After careful consideration of the entire record, [the ALJ] find[s] that the
    claimant has the residual functional capacity [("RFC")] to perform light work
    as defined in 20 CFR 416.967(b) except he can understand, remember, and

---

administrative law judge's decision, so this inconsistency is immaterial to the Court's analysis.  See Moore
v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*).

carry out simple tasks and instructions; he can use judgment to make simple work-related decisions; he can have occasional interaction with supervisors and coworkers but cannot participate in work groups or team dependent tasks; he cannot have interaction with the public; he cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and he can deal with occasional changes in a routine work setting.

The claimant is unable to perform any past relevant work (20 CFR 416.965).

5.  Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).  The claimant has not been under a disability, as defined in the Social Security Act, since October 1, 2018, the date the application was filed (20 CFR 416.920(g)).

R. 19-27.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g).  Plaintiff then filed this civil action requesting remand, arguing the ALJ failed to comply with proper legal standards by:  (1) failing to consider the Paragraph C criteria under Listing 12.04, (2) inadequately considering the medical evidence related to Plaintiff's schizoaffective disorder, and (3) rejecting Plaintiff's subjective complaints without sufficient justification.  (See doc. no. 18, "Pl.'s Br.")  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  (See doc. no. 19, "Comm'r's Br.")

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th

Cir. 2005); <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting <u>Bloodsworth</u>, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

Plaintiff argues the ALJ failed to comply with proper legal standards by:  (1) failing to adequately consider the Paragraph C criteria[2] under Listing 12.04, (2) inadequately considering the medical evidence related to Plaintiff's mental impairments, and (3) rejecting Plaintiff's subjective complaints without sufficient justification.  See Pl.'s Br.  The Commissioner maintains the ALJ's decision is supported by substantial evidence and should be affirmed.  See Comm'r's Br.

### A.    The ALJ Did Not Err in Finding Plaintiff Did Not Meet Listing 12.04

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity.  Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993).  Plaintiff bears the burden of showing that his condition meets or equals a Listing.  Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (per curiam); Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted).  It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant

---

[2] Plaintiff also expresses concern about the Paragraph A analysis, as the ALJ "skipped over" Paragraph A, Pl.'s Br., pp. 3-4, and proceeded to discuss the criteria of Paragraphs B and C, see R. 21-22. Accordingly, Plaintiff "made the reasonable presumption that the ALJ implicitly found that the 'Paragraph A' criteria of listings 12.04 were satisfied."  Pl.'s Br., p. 4.  Respondent did not contest this presumption and the Court agrees the ALJ implicitly found the Paragraph A criteria were met.

disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 404.1520(d).

Depressive, bipolar, and related disorders are conditions addressed by Listing 12.04, which has three paragraphs, designated A, B, and C. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00. To meet Listing 12.04, a claimant must demonstrate their mental disorder satisfies the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. Id. Specifically, Listing 12.04 requires:

> A. Medical documentation of . . . :
>     1. Depressive disorder . . .
> . . . . [or]
>     2. Bipolar disorder . . .
> . . . .
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>     1. Understand, remember, or apply information (see 12.00E1).
>     2. Interact with others (see 12.00E2).
>     3. Concentrate, persist, or maintain pace (see 12.00E3).
>     4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>     1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>     2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Id. § 12.04. The ALJ determined Plaintiff's impairments did not meet Listing 12.04, finding:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of the following.   1. Medical treatment, mental health therapy,

psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life (see 12.00G2c).

R. 22.

Plaintiff argues the ALJ's use of a "boilerplate statement" finding Paragraph C was not satisfied constitutes error and reflects the ALJ's failure to adequately consider the criteria of Paragraph C.  Pl.'s Br., pp. 3-14.  Plaintiff cites medical evidence in the record spanning from 2018 through 2020 to demonstrate the severity of Plaintiff's conditions and the extent of his treatment during that time.  Id. at 5-9.  Plaintiff also cites his Adult Function Report and testimony at the administrative hearing for further evidence of the severity of his conditions.  Id. at 9-10.  Respondent contends the ALJ's finding the Paragraph C criteria were not met is supported by substantial evidence because Plaintiff failed to demonstrate he receives "ongoing" treatment as required by Paragraph C.1.  Comm'r's Br., pp. 4-6.

The Court finds substantial evidence supports the ALJ's finding that Plaintiff did not meet all the criteria of Listing 12.04.  While Plaintiff cites significant evidence of his treatment from 2018-2020, (see Pl.'s Br., pp. 5-9 (citing R. 442, 883, 893, 905, 1672-73, 1675, 1700-04, 1710-13, 1716-18, 1902, 1906, 2103, 2122-23)), much of that evidence falls outside the relevant time period for review, (see R. 442, 883, 893, 905, 1672-73, 1675).  Moreover, much of the evidence cited by Plaintiff during the relevant time period supports the ALJ's finding that Plaintiff did not meet the Paragraph C.1 criteria of "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing."   (See R. 1701 (documenting Plaintiff "attends Eastman Mental Health Center" but "could not name his provider" or "state how often he was seen for treatment" and "reports that he has had no symptoms since April 2018"), R. 2103 (reflecting

inconsistent medication compliance and attendance at case manager appointments), 2122 (documenting Plaintiff's October 2020 report that he had not taken any medications for mental health treatment "since January").)  Further, Plaintiff cites no record evidence dated within the two years prior to the ALJ's decision to suggest he was receiving ongoing treatment as required by Paragraph C.  See R. 23 ("There is limited treatment related to the claimant's mental impairments since the application date.").  Accordingly, substantial evidence supports the ALJ's finding that the record "evidence fails to establish the presence of the 'paragraph C' criteria."  R. 22.

Though brief, the ALJ's finding that Plaintiff failed to meet the Paragraph C criteria is supported by substantial evidence, and an ALJ need not recite all the supporting record evidence where it is clear the ALJ considered the Plaintiff's overall condition.  See Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (per curiam) ("'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005))).  Because the ALJ makes clear she considered Plaintiff's medical condition as a whole, there was no need for the ALJ to mechanically repeat the record evidence supporting her Paragraph C finding.  Here, Plaintiff simply believes the evidence necessitates a different result.  However, the Court's role is not to reweigh the evidence.  See Moore, 405 F.3d at 1211.  Accordingly, the ALJ's failure to find Plaintiff meets Listing 12.04 does not require remand.

### B.    Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff argues the ALJ erred in formulating his RFC in two ways:  by inadequately considering the record evidence of Plaintiff's mental limitations and by improperly evaluating Plaintiff's subjective complaints.  Pl.'s Br., pp. 14-23.  The Court finds the ALJ made no error.

### 1.      Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments."  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted).  Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."  Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (per curiam).  Limitations are divided into three categories:  (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining whether a claimant can return to her past relevant work, the ALJ must consider "all the relevant medical and other evidence."  Phillips, 357 F.3d at 1238.

### 2.      The ALJ Adequately Considered Plaintiff's Mental Impairments When Formulating the RFC

Plaintiff first alleges the ALJ erred when formulating the RFC by failing to adequately consider Plaintiff's mental impairments in three ways:  (1) she did not address the episodic nature of Plaintiff's severe schizophrenia disorder bipolar type, (2) she impermissibly "cherry-picked" the record to find Plaintiff non-disabled, and (3) she failed to evaluate the

supportability factor of treating psychiatrist Dr. Louis A. Barton's opinion.  Pl.'s Br., pp. 14-20.

> The ALJ found, in relevant part,
>
> the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he can understand, remember, and carry out simple tasks and instructions; he can use judgment to make simple work-related decisions; he can have occasional interaction with supervisors and coworkers but cannot participate in work groups or team dependent tasks; he cannot have interaction with the public; he cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and he can deal with occasional changes in a routine work setting.

R. 22.  The ALJ then reviewed Plaintiff's medical records, including those related to his severe mental impairments, for four pages.  <u>See</u> R. 23-26.  Moreover, the ALJ affirmed she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's [RFC]."  R. 20.

Plaintiff argues the ALJ erred by failing to discuss the episodic nature of Plaintiff's bipolar disorder when formulating the RFC.  Pl.'s Br., pp. 16-17.  "[T]he Court rejects Plaintiff's argument that remand is necessary because the ALJ failed to account for fluctuations in Plaintiff's symptoms.  In h[er] decision, the ALJ evaluated the medical evidence and explained h[er] reasoning in determining Plaintiff's RFC."  <u>Colston v. Comm'r of Soc. Sec.</u>, No. 817-CV-1089, 2018 WL 4520366, at *4 (M.D. Fla. Sept. 21, 2018).  Moreover, Plaintiff fails to identify record evidence demonstrating Plaintiff's mental impairments were episodic in nature during the relevant time period.  <u>See</u> Pl.'s Br.  The recent cases Plaintiff cites do not change this analysis because the records in both of those cases contained specific evidence the ALJ failed to consider entirely, which is not the case here.  <u>See</u> <u>Torres v. Kijakazi</u>, No. 1:21-CV-20037, 2022 WL 4000797, at *12 (S.D. Fla. Aug. 15, 2022), *adopted by* 2022 WL 3975121 (S.D. Fla. Sept. 1, 2022); <u>Gilliland v. Comm'r, Soc. Sec. Admin.</u>, No. 2:22-CV-1000,

2023 WL 5600922, at *21 (N.D. Ala. Aug. 29, 2023).  Thus, these cases do not impact the Court's finding that the ALJ's findings are supported by substantial evidence and should be affirmed.

Next, Plaintiff argues the ALJ erred because she impermissibly "cherry-picked" the "record by finding notations where the Plaintiff was temporarily stable on his medications or when he was oriented to person, place, and time" to find Plaintiff non-disabled.  Pl.'s Br., p. 19.  Plaintiff's "argument suggests there is a plethora of evidence . . . that the ALJ ignored.  The record does not support this premise."  Baker v. Kijakazi, No. 122-CV-110, 2023 WL 3963814, at *3 (M.D. Ala. June 12, 2023).  In fact, the ALJ's decision belies Plaintiff's claim because it includes ample references to evidence demonstrating Plaintiff's bouts of medication noncompliance, mental instability, and disorientation.  See, e.g., R. 23 (cataloguing evidence of Plaintiff "hearing voices," "experiencing paranoia," being "out of medications for a month" in 2019, and visiting the emergency room in 2020 "with panic attack symptoms").  Moreover, Plaintiff does not specifically identify which pieces of the ALJ's decision constituted "cherry-picking," nor does he identify what record evidence favorable to Plaintiff the ALJ improperly discounted or omitted.  See Pl.'s Br., p. 19.

While Plaintiff takes issue with the ALJ's failure to discuss certain details from the record – much of which falls outside the relevant time period under review, as discussed *supra* – the ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review.  Gogel v. Comm'r of Soc. Sec., No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer, 395 F.3d at 1211, and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)).  Considering the ALJ's decision as a whole,

including the overall discussion of Plaintiff's limitations, it is clear the ALJ did not "cherry-pick" only the non-disabling evidence, as she considered "all the relevant medical and other evidence" and appropriately weighed that evidence to formulate Plaintiff's RFC.  Phillips, 357 F.3d at 1238.

Third, Plaintiff argues the ALJ failed to properly follow the guidelines in 20 C.F.R. § 416.920c when assessing the persuasiveness of Plaintiff's medical evidence because she did not evaluate the supportability factor of treating psychiatrist Dr. Louis A. Barton's opinion. Pl.'s Br., pp. 17-19.

### a.      Standards for Evaluating Medical Opinions

Because Plaintiff filed his SSI application on October 1, 2018, R. 17, 394, the ALJ assessed the medical evidence in the record under recently revised regulations.  "For claims filed on or after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) or prior administrative medical finding(s).  This regulation abrogated our earlier precedents applying the treating-physician rule, which required good cause to discount a treating physician's opinion." Sturdivant v. Soc. Sec. Admin., Comm'r, No. 22-13952, 2023 WL 3526609, at *3 (11th Cir. May 18, 2023) (per curiam) (citations and internal quotes omitted); 20 C.F.R. § 416.920c(a) (explaining ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources"); see also Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir. 2022) (explaining 2017 revision eliminated the treating-physician rule and prohibits ALJs from "defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any medical opinion(s)" (citations omitted)).  Elimination of the treating source rule is intended to

remove "confusion about a hierarchy of medical sources and instead focus adjudication" on the evidence, as well as discourage courts from reweighing the evidence in violation of the deferential substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors.  Harner, 38 F.4th at 897; 20 C.F.R. § 416.920c(c)(1)-(c)(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(b)(2).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  See Sturdivant, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(c)(1)-(c)(2).

Furthermore, the ALJ need not articulate how it considered the factors for each medical opinion or prior administrative medical finding from one medical source individually.  Freyhagen v. Comm'r of Soc. Sec. Admin., No. 318-CV-1108, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing 20 C.F.R. § 404.1520c(b)(1) (2017)).  "Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."  20 C.F.R. §§ 416.920c(b)(1) (2017) & 404.1520c(b)(1) (2017).  Courts recognize the new regulations erect a framework that is highly deferential to the Commissioner.  See Cook v. Comm'r of Soc. Sec., No. 620-cv-1197, 2021

WL 1565832, at *4 (M.D. Fla. Apr. 6, 2021), *adopted by* 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (affirming ALJ's rejection of treating source opinion because inconsistent and unsupported by record); Bunn v. Soc. Sec. Admin., Comm'r, No. 220-CV-218, 2021 WL 1171537, at *9 (N.D. Ala. Mar. 29, 2021) (same).

> **b.**     **The ALJ Applied the Correct Legal Standards to the Analysis of Dr. Barton's Opinion**

Dr. Barton provided an opinion after examining Plaintiff in September 2019.  R. 1710-13.  Although the ALJ noted Dr. Barton's opinion, "if accurate, would support a finding that the claimant is disabled due to various and significant mental restrictions," she also found it "not fully persuasive." R. 24.  The ALJ found Dr. Barton's opinion less persuasive because it was supported with a check-mark form, provided "limited narrative explanation for such significant restrictions" and was "not consistent with the claimant's conservative mental health treatment, his response to medications, and his mental status examination results." Id.  The narrative explanation provided by Dr. Barton provided in full:

> Hearing voices since age 13
> Incarcerated: on + off since age 16
> [Diagnosed] ADHD age 6 – [diagnosed] schizophrenia early 20's
> Sustained multiple closed head injuries, has developed tardive dyskinesia
> Unable to learn new material
> Severe short term memory deficits [secondary] to head injuries

R. 1713.

To the extent Dr. Barton opined on Plaintiff's ability to perform work, under the regulations the ALJ must "explain how [she] considered the supportability and consistency factors" in his decision.  See 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Here, the ALJ only briefly stated how she evaluated the supportability of Dr. Barton's opinion.  See R. 24.

The Commissioner argues the ALJ is not required to use "magic language," see Comm'r's Br., p. 9, and the ALJ's reasoning makes clear she adequately addressed the supportability of Dr. Barton's opinion, id. at 8-10.  The Court finds the ALJ applied the correct legal standards when analyzing Dr. Barton's opinion because there was sufficient explicit and implicit discussion of supportability in the ALJ's decision.

"Supportability" under the regulations refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  "Put differently, the ALJ must analyze whether the medical source's opinion is . . . supported by the source's own records." Lewno v. Kijakazi, No. 821-CV-1334, 2022 WL 3999282, at *4 (M.D. Fla. Sept. 1, 2022).

Here, the ALJ provided a thorough analysis of Plaintiff's medical history before evaluating Dr. Barton's opinion rendered in September 2019.  When evaluating Dr. Barton's opinion, the ALJ stated:

> Louis A. Barton, M.D., prepared a medical source statement, if accurate, would support a finding that the claimant is disabled due to various and significant mental restrictions.  This opinion is not fully persuasive.  It is supported with a check-mark form and a limited narrative explanation for such significant restrictions.  It is not consistent with the claimant's conservative mental health treatment, his response to medications, and his mental status examination results.

R. 24 (citations omitted).  The phrase "[i]t is supported with" demonstrates the ALJ explicitly considered the supportability factor.  Moreover, the discussion preceding this assessment of Dr. Barton's opinion contains ample analysis of Plaintiff's records which further demonstrate the lack of supportability of Dr. Barton's opinion.

The record contains documentation of Plaintiff's visits with Dr. Barton dating back to September 2018, R. 1672, through April 2021, R. 2101.   However, because "[t]he supportability factor deals with the extent to which a medical source has articulated support for the source's own opinion," Lewno, 2022 WL 3999282, at *5, only the ALJ's discussion of Dr. Barton's records through September 2019, when Dr. Barton issued the opinion at issue, is relevant.

In discussing Plaintiff's medical history from September 2018 to September 2019, the ALJ cited to medical records provided by Dr. Barton on September 25, 2018, and September 18, 2019.  See R. 23 (citing R. 1672-73, 1679-80).  In doing so, the ALJ pointed out that Dr. Barton's own records in September 2018 reflected Plaintiff had been taking Invega, an antipsychotic medication, for six months, which was effective.  Id. (citing R. 1672).  Moreover, the ALJ noted Dr. Barton's records in September 2019, from a visit conducted the same day Dr. Barton issued his medical opinion, demonstrated Plaintiff had been out of medications for a month and was prescribed a trial dose of a new medication.  Id. (citing R. 1680).  The ALJ's discussion of Plaintiff's treatment by Dr. Barton in the year prior to Dr. Barton issuing his opinion speaks directly to the supportability of Dr. Barton's opinion.   In particular, Dr. Barton's opinion, which reflected significant limitations, was not supported by Dr. Barton's own records demonstrating the effectiveness of Plaintiff's antipsychotic medications when he maintained medication compliance.  See R. 1672.  Dr. Barton's opinion was also not supported by his notes, written the same day as his opinion, which demonstrate Plaintiff's noncompliance with his medication regimen and resulting symptoms, which Dr. Barton's notes do not describe as severe or disabling.  See R. 1680.

Here, the ALJ addressed the supportability of Dr. Barton's opinion in two ways.  First, she directly discussed supportability by noting Dr. Baron's opinion was supported only by the limited explanation he provided in the narrative portion of the form, which did not adequately support the significant impairments he suggested Plaintiff had.  See R. 24, 1710-13.  Second, she implicitly addressed supportability by discussing Dr. Barton's own records documenting Plaintiff's treatment from in September 2018 and 2019, which also did not support the significant impairments Dr. Barton indicated in his opinion.  See R. 24, 1672, 1680, 1710-13.  Thus, the ALJ's finding that Dr. Barton's opinion was not persuasive reflected the ALJ's explicit and implicit findings that Dr. Barton's opinion was not supported by his own records.  Accordingly, the Court has ample information to conduct meaningful judicial review and considering the ALJ's analysis as a whole, the ALJ sufficiently addressed the supportability factor and her RFC assessment is supported by substantial evidence.

While the ALJ may not have provided a robust discussion of the supportability of Dr. Barton's opinion, "there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them.  What matters is whether the ALJ 'state[s] with at least some measure of clarity the grounds for his [or her] decision.'" Raper v. Comm'r of Soc. Sec., No. 22-11103, 2024 WL 24933, at *10, n.14 (11th Cir. Jan. 3, 2024) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see also Thaxton v. Kijakazi, No. 120-CV-616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself."); Lewno, 2022 WL 3999282, at *5.  Here, the ALJ provided sufficient clarity as to the grounds for finding Dr. Barton's opinion not fully persuasive, and substantial evidence supports that decision.

### 3.    The ALJ Adequately Considered Plaintiff's Subjective Complaints When Formulating the RFC

#### a.    The Standard for Evaluating Subjective Complaints

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under the Eleventh Circuit's standard, Plaintiff must show:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction.  Id.  Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or non-treating sources about how the symptoms affect the claimant in deciding the issue of disability."  Jarrell v. Comm'r of Soc. Sec., 433 F. App'x 812, 814 (11th Cir. 2011) (per curiam) (citing 20 C.F.R. § 404.1529(c)(4)).

In doing so, the ALJ is not judging a claimant's credibility or character for truthfulness, but rather "whether the 'individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.'"  Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (quoting SSR 16-3p, 2016 WL 1020935, at *14170 (orig. publ. Mar. 16, 2016)).  Social Security Ruling 16-3p clarifies:

> that subjective symptom evaluation is not an examination of an individual's character . . . . Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.  We evaluate the intensity and persistence of an

> individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . .

SSR 16-3p, 2016 WL 1020935, at *14167.

Moreover, this Court is required to uphold the Commissioner's determination regarding subjective complaints if it is supported by substantial evidence.  Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).[3]  As courts within this Circuit have explained,

> SSR 16–3p also expressly provides that the ALJ may not make conclusory statements about having considered the symptoms, or merely recite the factors described in the regulations. Rather, the determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Ring v. Berryhill, 241 F. Supp. 3d 1235, 1251 (N.D. Ala. 2017), aff'd sub nom. Ring v. Soc. Sec. Admin., Comm'r, 728 F. App'x 966 (11th Cir. 2018); see also Dyer, 395 F.3d at 1210-11.  Finally, in conducting its review, the Court is mindful the question is not whether the ALJ could have reasonably considered Plaintiff's complaints, but rather, "whether the ALJ was clearly wrong to discredit" them.  Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam).

### b.    The ALJ Did Not Err in Considering Plaintiff's Subjective Complaints When Formulating the RFC

Plaintiff argues the ALJ's decision finding Plaintiff's subjective complaints inconsistent with other record evidence was insufficient because the ALJ "merely gave a general boilerplate statement" explaining her finding.  Pl.'s Br., p. 22.  Specifically, Plaintiff argues the ALJ's use of boilerplate language "broadly reject[ing] Plaintiff's statement about the intensity, persistence, and

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

limiting effects of his symptoms . . . was not geared to this specific decision" and was therefore insufficient because she "fail[ed] to provide an explicit and adequate explanation for discrediting Plaintiff's testimony." Id. at 23.  The Court disagrees.

Plaintiff testified, as the ALJ explained, that he has a history of heart issues, had been hospitalized three or four times in the recent past preceding the ALJ's decision, and is unable to stand for fifteen minutes.  R. 23.  The ALJ also recounted Plaintiff's testimony that he "can walk for fifteen minutes some mornings, sit for an hour at a time before needing to switch positions, and lift and carry up to twenty pounds without pain."  Id.  Concerning Plaintiff's mental impairments, the ALJ noted Plaintiff's reports of a history of hearing voices since age thirteen, feelings of paranoia, and testimony that he undergoes weekly mental health treatment.  Id.

After this review of Plaintiff's subjective complaints, the ALJ explained:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R. 23.

The ALJ then reviewed medical evidence from 2018 through 2023.  R. 23-25.  The ALJ detailed Plaintiff's 2022 hospitalizations related to shortness of breath and heart problems, noting his post-hospitalization treatment records showed "normal breath sounds[,] . . . regular [heart]rate and rhythm, with no murmurs present[, and] . . . no edema of extremities."  R. 24 (citing R. 1952-54).  The ALJ also discussed November 2022 treatment records, which showed Plaintiff experienced sinus tachycardia and pulmonary edema when he ran out of medication but was subsequently restarted on his medications.  R. 24 (citing R. 2032).

The ALJ also reviewed the record evidence as it related to Plaintiff's subjective complaints

concerning his mental impairments.   Specifically, the ALJ noted medical records verified

Plaintiff's subjective complaint of hearing voices since age 13, but also demonstrated effectiveness

of antipsychotic medication when Plaintiff was compliant with his medication regimen.   R. 23-24.

She also noted limited record evidence related to Plaintiff's mental impairments since the

application date, and that the evidence available primarily demonstrated Plaintiff's responsiveness

to medication and overall positive mental functioning.   R. 23-24.

After this initial analysis of the record, the ALJ went on to evaluate the medical opinions

of Plaintiff's treating physician, a consultative examiner, and state agency psychological

consultants, which provided additional support and context for Plaintiff's RFC and the ALJ's

finding that Plaintiff's subjective complaints were not fully consistent with the medical evidence

of record.   R. 23-25.

After reviewing all of this evidence, the ALJ stated:

> The claimant does have heart related impairments.   Although his LVEF has been
> as low as 20%, when he is capable of being compliant with treatment and
> medications, he has denied chest pain, palpitation, syncope, dyspnea on exertion,
> and lower extremity edema.   On physical examination, his breathing was
> unlabored.  He had normal breath sounds.  His heart was of regular rate and rhythm,
> with no murmurs present.  He had no edema of extremities.   Mentally, there is
> limited treatment related to the claimant's mental impairments since the application
> date.  He has presented for emergency room treatment on July 8, 2020 with panic
> attack symptoms and released the same day.   On February 8, 2021, the claimant
> was described as doing well on his medications of Trileptal, Ingrezza, Zyprexa, and
> Trintellix.   According to February 2, 2023 mental health treatment records, the
> claimant was oriented to person, place, and time.  He was appropriately dressed and
> groomed.  His mood was anxious.  His thought process was goal directed.  He
> denied suicidal thoughts and hallucinations.  His insight and judgment were fair.
> He had no cognitive deficits.  His immediate memory was described as impaired
> and was noted to have average intelligence.

R. 25-26 (citing R. 1904-06, 1952-54, 2090-93, 2103).

Plaintiff's main objection concerning the ALJ's assessment of Plaintiff's subjective

complaints is the ALJ's "broad[] reject[ion of] Plaintiff's statement about the intensity, persistence,

and limiting effects of his symptoms, using boilerplate language that was not geared to this specific decision." Pl.'s Br., p. 23.  That is not an accurate reflection of the ALJ's finding.  The Court finds the ALJ's examination of the evidence is sufficient and created an implication "so clear as to amount to a specific credibility finding."  Foote, 67 F.3d at 1561-62.  By clearly laying out Plaintiff's subjective complaints and the objective evidence both in contradiction and support, the ALJ made clear how she considered Plaintiff's subjective complaints in light of the other evidence. The ALJ simply described the evidence in a different sequence than Plaintiff desired.

This Court's job is not to review the administrative record *de novo*, but rather is to review the record to determine whether there is substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant.  See Crawford, 363 F.3d at 1158-59.  Plaintiff concludes the ALJ failed to provide an adequate explanation for her assessment of Plaintiff's subjective complaints because she stated her conclusion first, then outlined the relevant record evidence supporting that conclusion.  See Pl.'s Br., pp. 20-23; R. 24-26; see also Comm'r's Br., pp. 10-11.  However, such sequencing does not mean the Commissioner's decision must be reversed.  The ALJ's decision makes clear she adequately considered the record as a whole, including Plaintiff's subjective complaints, when determining the RFC.  The ALJ acknowledged Plaintiff's subjective complaints, but coupled with an extensive review of the record, determined the complaints were not credible considering the intensity, persistence and limiting effects claimed by Plaintiff.  Thus, the ALJ properly considered Plaintiff's subjective complaints.  The ALJ's determination is supported by substantial evidence, and the ALJ made no legal error.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to

sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be

**DENIED**, (doc. no. 17), the Commissioner's final decision be **AFFIRMED**, and a final judgment

be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22nd day of May, 2024, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA